UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATHISEN CO.,

       Plaintiff,

v.                                                                                          Case No. 09-13491
                                                                  Honorable Patrick J. Duggan
FEDERAL INSURANCE CO.,

       Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 30, 2009.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

On August 6, 2009, Plaintiff Mathisen Company ("Mathisen") initiated this action against Defendant Federal Insurance Company ("Federal") in the Circuit Court for Oakland County, Michigan, seeking payment for subcontract work on a project for which Federal was the surety. On September 3, 2009, Federal removed Mathisen's complaint to federal court based on diversity jurisdiction, 28 U.S.C. §§ 1332 and 1441. Presently before the Court is Federal's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The motion has been fully briefed and this Court held a motion hearing on November 19, 2009.

1

**I.     Standard for Summary Judgment**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

**II.     Factual and Procedural Background**

This case arises from a construction project in White Lake, Michigan, known as the Indian Springs Metropark Environmental Education Center ("Project").  The Project is owned by the Huron Clinton Metropolitan Authority ("HCMA"), a public authority. HCMA entered into a contract with JM Olson Corporation ("JM Olson") to act as the principal contractor on the project.

JM Olson was required by state statute to procure performance and payment surety bonds with respect to the Project, as the Project was owned by a public authority.  *See* Mich. Comp. Laws § 129.201 *et seq*.  These bonds guaranteed JM Olson's performance to HCMA and payment to its subcontractors on the Project.  Federal issued a labor and material payment bond to JM Olson.  On January 8, 2003, JM Olson entered into a subcontract with Mathisen for Mathisen to perform certain mechanical contracting work with respect to the Project.  (Def.'s Mot. Ex. 3.)

On April 7, 2006, Mathisen filed a lawsuit against JM Olson and Federal in state court, alleging that JM Olson breached the parties subcontract by *inter alia* causing delay in the Project and failing to make progress payments within ten days after receiving payment from HCMA.  (Def.'s Mot. Ex. 5.)  Mathisen claimed damages in the amount of $250,707.50.  (*Id.*)  Mathisen also sought payment of its damages from Federal under the labor and material payment bond.  (*Id.*)

JM Olson and Federal filed a motion to compel arbitration in the state court litigation based on an arbitration provision in the subcontract between JM Olson and

Mathisen. Mathisen and JM Olson subsequently executed a Stipulated Order for Arbitration, which Circuit Court Judge Denise Langford Morris signed and entered on July 12, 2006. (Def.'s Mot. Ex. 7.) Mathisen filed a demand for arbitration with the American Arbitration Association ("AAA") on January 26, 2007. (*Id*. Ex. 8.)

It is unclear what, if anything, happened in the arbitration proceedings. However, on October 22, 2008, AAA sent a letter to Mathisen's and JM Olson's counsel requesting information regarding the status of the matter. (*Id*. Ex. 9.) In this letter, AAA indicated that its policy is to hold cases in abeyance for one year and that the parties may hold the matter in abeyance beyond that period if a payment of $300.00 is remitted to the AAA. (*Id*.) Having received no communication from either party in response to its letter, AAA sent a letter to Mathisen's and JM Olson's counsel on December 3, 2008, advising that AAA wold close its file on or before December 17, 2008 unless advised otherwise by either party.

In the meantime, construction on the Project ended on or about October 1, 2007 and HCMA made final payment to JM Olson on November 8, 2007. (Def.'s Mot. Exs. 11, 12.) In approximately May 2008, JM Olson ceased all operations and business. (*See id*. Ex. 13.) Mathisen's President and principal owner, William Mathisen, indicates that he became aware that JM Olson was in financial trouble in 2007. (Pl.'s Resp. Ex. B ¶ 4.) John Olson, JM Olson's President, had fled to the Bahamas sometime before November 2, 2008, and was facing lawsuits by various creditors. (Def.'s Mot. Ex. 13.)

On August 6, 2009, Mathisen filed the current complaint against Federal in state

4

court.

## III.     Federal's Motion and Mathisen's Response

Federal seeks summary judgment, contending that Mathisen's claim is barred by the applicable one-year statute of limitations, Mich. Compiled Laws Section 129.209. Alternatively, Federal argues that Mathisen's claim is barred by the equitable doctrine of laches.

In response to Federal's motion, Mathisen first discusses the prior arbitration, contending that there is no evidence the arbitration was dismissed and indicating that the Stipulated Order for Arbitration signed by Judge Langford Morris provided for the state circuit court to retain jurisdiction for purposes of entry of an order confirming the arbitrator's award. Mathisen further states that, if Federal agrees that all issues are subject to arbitration, nothing prevents Mathisen and Federal from "resuming with" arbitration with regard to Mathisen's bond claim against Federal.  If this Court declines to order the parties "back to" binding arbitration, Mathisen indicates that Federal's statute of limitations argument must be addressed and "acknowledge[s] that a strict application of the statute will result in Mathisen's right to file suit expiring on November 7, 2008." (Pl.'s Resp. Br. at 4.)  Mathisen argues, however, that equitable tolling should apply.  As to Federal's laches argument, Mathisen responds that it did not unreasonably delay in bringing suit and that Federal fails to establish any material prejudice resulting from any delay.

## IV.     Applicable Law and Analysis

As an initial matter, Mathisen points to no provision requiring arbitration of the present dispute between it and Federal. According to Federal, there is nothing in Federal's surety contract requiring it to arbitrate with Mathisen. In comparison, the contract between Mathisen and JM Olson required arbitration and thus the Stipulated Order for Arbitration ordered Mathisen and JM Olson, only, to arbitration.

Michigan Compiled Law Section 129.209 provides the limitations period applicable to Mathisen's claim against Federal:

> An action instituted on the payment bond shall be brought only in the appropriate court in the political subdivision in which the contract was to be performed. No action shall be commenced after the expiration of 1 year from the date on which final payment was made to the principal contractor.

There is no dispute that HMCA made the final payment to JM Olson with respect to the Project on November 8, 2007. Therefore, Mathisen was required to initiate its action on the payment bond on or before November 7, 2008.[1] As this action only was filed on August 6, 2009, it is time-barred unless equitable tolling applies.[2]

---

[1] Federal acknowledges that Mathisen's 2006 lawsuit would toll the limitations period while it was pending; however, the lawsuit was filed and dismissed before the applicable limitations period began to run. As indicated earlier, the lawsuit was filed in April 2006 and dismissed without prejudice in July 2006. Final payment was made to JM Olson on November 8, 2007.

[2] In its motion, Federal argues that the arbitration proceeding did not toll the limitations period. (Def.'s Mot. at 7-9 (citing *Varga v. Heritage Hosp.*, 139 Mich. App. 358, 362 N.W.2d 282 (1984) and *James v. Logee*, 150 Mich. App. 35, 388 N.W.2d 294 (1986)). Mathisen does not contend otherwise in response. In any event, based on the cases cited by Federal, the Court finds that the limitations period was not tolled while Mathisen and JM Olson were in arbitration.

Mathisen cites *Ward v. Rooney-Gandy*, 265 Mich. App. 515, 696 N.W.2d 64 (2005), as an example of a case where the Michigan courts applied the doctrine of equitable tolling. The Michigan Supreme Court, however, reversed that decision. *See* 474 Mich. 917, 705 N.W.2d 686 (2005). Further, the Michigan Supreme Court has been reluctant to recognize equitable estoppel "absent intentional or negligent conduct designed to induce a plaintiff to refrain from bringing a timely action." *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 454 Mich. 263, 270, 562 N.W.2d 648 (1997). As the Court stated elsewhere: "Although courts undoubtedly possess equitable power, such power has traditionally been reserved for unusual circumstances such as fraud or mutual mistake." *Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 590, 702 N.W.2d 539, 556 (2005). The *Devillers* Court strongly cautioned against courts using equity to "trump an unambiguous and constitutionally valid statutory enactment," noting the "immeasurable" damage such an approach "causes to the separation of powers mandate of our Constitution and the overall structure of our government." *Id.* at 591, 702 N.W.2d at 556-57.

In this case, there is no evidence of fraud or mutual mistake. *See Devillers, supra*. There also is no suggestion that Federal engaged in "intentional or negligent conduct designed to induce [Mathisen] from bringing a timely action." *Cincinnati Ins. Co., supra*. Mathisen fails to set forth any other reason why the statute of limitations should be tolled. For these reasons, and because Michigan Compiled Law Section 129.209 unambiguously establishes a one-year limitations period applicable to Mathisen's claim, the Court concludes that equitable tolling is not appropriate in this case.

As such, the Court holds that Mathisen's claim against Federal is time-barred. The Court therefore finds it unnecessary to address Federal's alternative claim that the doctrine of laches bars the claim.

Accordingly,

**IT IS ORDERED**, that Defendant Federal Insurance Company's Motion for Summary Judgment is **GRANTED**.

                              s/PATRICK J. DUGGAN
                              UNITED STATES DISTRICT JUDGE

Copies to:
Paul A. Bailey, Esq.
Jason C. Yert, Esq.
James R. Case, Esq.
Charles G. Calio, Esq.